UNITED STATES, Appellee

v

JERRY D. CHANDLER, Commissaryman Seaman Apprentice,
U. S. Navy, Appellant

No. 28,077

July 26, 1974

*Lieutenant Stephen T. Myking,* JAGC, USNR, argued the cause for
Appellant, Accused.

*Lieutenant Mark D. Wigder,* JAGC, USNR, argued the cause for Appellee,
United States. With him on the brief were *Lieutenant Colonel P. N. Kress,*
USMC, *Lieutenant Colonel G. L. Bailey,* USMC, and *Lieutenant Stephen M.
Hackerman,* JAGC, USNR.

## OPINION OF THE COURT

QUINN, Judge:

This appeal brings up for review the admissibility and legal effect of part of an entry extracted from the accused's service record that was admitted in evidence at his trial. The entire entry is as follows:

> 73 Mar 27: Missed sailing of USS John F. Kennedy [CVA 67] from Norfolk, Virginia on 73 Mar 27. Chandler was informed of the scheduled movement by the ship's plan of the day

Among other offenses, the accused was charged with unauthorized absence from the U. S. S. *John F. Kennedy* from March 16 to April 9, 1973, and with negligently missing, on March 27, the scheduled movement of the vessel, in violation of Articles 86 and 87, Uniform Code of Military Justice, respectively, 10 USC §§ 886 and 887. He pleaded guilty to the unauthorized absence charge, but not guilty to the missing movement offense. The only evidence of the latter was the specified extract from the accused's service record.

In his closing argument, defense counsel contended that publication of the vessel's movement in the plan of the day, as implied in the record entry, did not "indicate that . . . [the accused] had

knowledge or had reasonable cause to know" of the scheduled movement at the time he absented himself. Responding to the contention, trial counsel maintained that the court members could conclude that the accused had reasonable cause to know the movement of the ship because he "had the responsibility to ascertain . . . the information published in the Plan of the Day." Before the court members retired to deliberate on the findings, one member asked, by way of a written question, whether the members could be advised "if the notice of the ship's movement was published while . . . [the accused] was aboard—i.e. was it published prior to 16 March 1973." The trial judge refused to allow inquiry into that matter because the parties had rested, and the court members had to decide the case on the basis of the evidence before them. The members found the accused guilty of the missing movement offense, together with the offenses to which he had pleaded guilty.

Events affecting personnel of a command are often made a matter of record; and an authenticated extract of the record is admissible in a criminal case as one of the exceptions to the general rule which excludes hearsay from evidence. Manual for Courts-Martial, United States, 1969 (Rev.), paragraphs 144b and 144c. In recent years, some of the rules as to admissibility of hearsay have been affected by decisions of the United States Supreme Court. The process of what Mr. Justice Rehnquist has described as the "constitutionalization of the intricacies of the common law of evidence" is invoked, in part, by appellate defense counsel. Chambers v Mississippi, 410 US 284, 308 (1973) (dissenting opinion).

At the times important to this appeal, pertinent Navy regulations provided for recording in the individual's service record the fact that he missed the scheduled movement of his ship. See Joint Uniform Military Pay System (JUMPS) Field Procedures Handbook (NAVSO P-3086), section 5206 (March 1972); Bureau of Naval Personnel Manual (BUPERS-MAN) 3430150 at 34–45 (now 34–46). In addition, a statement was to be included of "details showing that the absentee had knowledge of the time" of scheduled movement. The sample form for the entire entry is set out in the BUPERS-MAN as follows:

> 1 Dec 67: Missed sailing of USS Glory (CVA-OO) from Norfolk, Virginia on 1 Dec 67 enroute to Quonset Point, Rhode Island. DOE was informed as to the scheduled movement by (name of Division Officer or other person) on 27 Nov 67. OR in that this information was published at morning quarters in his presence by (name of Division Officer or other person) on 27 and 28 Nov 67. (NOTE: Entry relative to knowledge of movement should not be made if the pertinent information has not been imparted to the person concerned.) [Exhibits, Chapter 50, pg. 50-X-33.]

Appellate defense counsel offer no challenge to the admissibility of the entry indicating that accused missed the movement of the *Kennedy* on March 27, 1973. However, they contend the entry that the accused was "informed" of the scheduled movement by the plan of the day is hearsay opinion that is outside the scope of the official or business record exceptions, and its admission in evidence denied the accused his constitutional right to confrontation of the witnesses against him.

Generally, official records are predicated upon the personal knowledge of an officer or the subordinates in his office or upon an investigation which the officer is required to conduct to determine the fact or event that is required by law to be recorded. See 5 Wigmore, Evidence § 1639 at 552 (3d ed. 1940). The investigative or "evaluative" report comes into "almost certain collision with confrontation rights which would result from their use against the accused in a criminal case." Proposed Fed. R. Evid. 803, Advisory Committee's Note, Exception (8) (Supreme Court Draft Nov. 1972). See also United States v Miller, 33 CMR 622

(NBR 1963) (dissenting opinion). In consequence, the Advisory Committee recommended, and the United States Supreme Court adopted, a rule, submitted to Congress but not yet approved by it, which provides that the official record of "factual findings resulting from an investigation made pursuant to authority granted by law" is admissible only in "civil cases and against the government in criminal cases." Proposed Fed. R. Evid. 803. In this case, the entry in the accused's service record of the putative fact that he had knowledge of the scheduled movement of the *Kennedy* would appear to fall within the "evaluative" report category. However, the nature of the particular entry makes it unnecessary for us to reach the constitutional issue, either as contemplated by proposed rule 803 or as presented by appellate defense counsel.

The entry affirms the accused was "informed" of the *Kennedy's* scheduled movement by the plan of the day. A plan of the day can be competent evidence of a scheduled movement of a vessel. United States v McBride, 6 USCMA 430, 436, 20 CMR 146, 152 (1955). Trial counsel argued, and appellate Government counsel reiterate the argument, that the entry in issue implies that the plan was published aboard the *Kennedy*. However, publication alone does not import knowledge of the content by the accused. As the principal opinion in the *McBride* case noted, the plan must be "connected up to establish" such knowledge. 6 USCMA at 435, 20 CMR at 151.

The BUPERSMAN model form of entry cites publication of a scheduled movement in the presence of the accused as evidencing his knowledge of it. As the entry before us does not follow the model form by specifying that the accused was directly apprised of the plan of the day, it is reasonable to infer that the entrant intended to report only that the accused learned of the plan by means other than public announcement of it in his presence. The inference is strengthened by the statement that the accused was informed of the prospective movement by the plan itself. What is apparent from the language of the entry, therefore, is that the plan was posted or circulated aboard the *Kennedy*, with the requirement, or expectation, that persons assigned or attached to the vessel would inform themselves of the content of the plan in time to meet specified schedules of employment or activity.

No direct evidence of a requirement on the part of *Kennedy* personnel to ascertain, in time, the content of a plan of the day appears in the record. That such a requirement existed may perhaps be spelled out of some aspects of the arguments of both trial and defense counsel; additionally, appellate government counsel advise in their brief that all the court members were from the *Kennedy*, and from that premise, argue that the court members were cognizant of the obligation on the part of the *Kennedy* personnel to read the plan of the day. See United States v Jones, 2 USCMA 80, 87, 6 CMR 80, 87 (1952). Assuming these circumstances justify government counsel's contention, the duty to inform oneself about a particular matter is not the equivalent of actual knowledge; one can neglect to comply with the obligation and, therefore, actually be without knowledge. See United States v Curtin, 9 USCMA 427, 26 CMR 207 (1958); United States v Smith, 27 CMR 880 (NBR 1959). Considering an analogous situation in which notice of the scheduled movement of a ship was disseminated by appropriate means, a panel of the U. S. Navy Court of Military Review observed that the publication merely indicates an "opportunity to know" on the part of the accused; that opportunity can provide the basis for an inference that the accused "did know," but the inference is not a substitute for actual knowledge of the movement, which is essential for conviction of the offense of missing movement, and it can be overcome by other evidence in the record. United States v Newville, NCM 72-0071 (NCMR March 31, 1972). Here, even the inference posited in *Newville* is not justified.

As established by the evidence and the accused's plea of guilty, the accused absented himself on March 16, 1973, from the *Kennedy* and remained away until April 9, 1973. The entry that he missed the sailing of the *Kennedy* is dated March 27, 1973. That portion of the entry referring to the plan of the day

does not specify the date the plan was published. Common experience might perhaps suggest that, except in an emergency, the movement of a ship would be announced in advance of the day of departure, but we know of no empirical basis for an inference, and none has been presented to us, that such announcement is likely to be made at least 11 days in advance of departure, which is the interval of time between initiation of the accused's absence and the *Kennedy's* movement. As we pointed out earlier; at least one member of the court attempted to connect the date of publication of the plan of the day with the accused by inquiring whether publication occurred while the accused was still aboard, but his effort was frustrated by the trial judge's ruling.

Government counsel concede that for the plan of the day "to have afforded" notice to the accused of the scheduled movement of the *Kennedy,* it "must have been published prior to appellant's unauthorized absence." They argue that as the person who made the entry must be presumed to have performed his official duty, it may be inferred that he would not have recorded that the accused was informed by the plan unless he first determined that the plan had been published before the accused left the *Kennedy.* They reason that "by examining the Plans of the Day prior to 16 March [the recording official could] easily ascertain that appellant had been informed" of the movement scheduled for March 27. Whatever other deficiencies may inhere in the argument, its initial premise of regularity in the making of the entry is contraverted by the record.

According to the model form of entry, the date the accused is informed of the scheduled movement of the ship is an important part of the entry as to his knowledge. Consequently, if any inference can be drawn from the failure of the record to show the date of the plan of the day, it is not that the person making the entry ascertained from examination of the file of the plans that this particular plan was published before the accused's absence, but rather that he did not know and did not determine the date of the plan. As it stands, therefore, the entry does not justify a finding beyond a reasonable doubt that publication of the plan aboard the *Kennedy* took place before the accused left the ship. We are constrained to conclude, therefore, that the evidence before the court members was insufficient to support its finding that the accused had actual knowledge of the scheduled movement of the *Kennedy.*

The decision of the Court of Military Review is reversed as to the missing movement offense (Charge II and its specification) and the sentence. A rehearing of the sentence may be ordered on the remaining findings of guilty. Charge II and its specification are dismissed.

Senior Judge FERGUSON concurs.